IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PORTLAND ADVENTIST MEDICAL CENTER, et al, <br><br> Plaintiffs, <br><br> v. <br><br> TOMMY G. THOMPSON, Secretary, U.S. Department of Health and Human Services, <br><br> Defendant. | Civil No. 02-289-JO <br><br> OPINION AND ORDER |

Charles S. Gauger
1437 S.W. Columbia Street
Portland, OR 97201

Sanford E. Pitler
Lisa Dobson Gould
Bennett Bigelow & Leedom, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101

    Attorneys for Plaintiff

OPINION AND ORDER - 1

Felicia L. Chambers
U.S. Department of Justice
Civil Division, Federal Programs Branch
200 Massachusetts Avenue NW, Room 7228
Washington, D.C. 20530

Sheila Lieber
U.S. Department of Justice
Civil Division
Federal Programs Branch
PO Box 883
Washington, DC 20044

Robert D. Nesler
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

      Attorneys for Defendant

JONES, Judge:

Plaintiff hospitals brought this and two related actions seeking a declaration that defendant, the Secretary of the United States Department of Health and Human Services, used an invalid method to calculate certain Medicare payments to hospitals that serve a disproportionate number of low income clients. After obtaining a judgment in their favor, which was affirmed on appeal to the Ninth Circuit Court of Appeals, and a subsequent Order and Amended Judgment, plaintiffs filed the pending motion (# 100) to enforce the judgment and award costs. For the reasons explained below, the motion is denied.

## BACKGROUND

In this action, referred to by the parties as "Adventist I," plaintiffs asserted that the method for calculating "disproportionate share" (DSH) payments that the Secretary used before January 20, 2000, improperly excluded "expanded eligibility populations" that were made Medicaid-eligible only because of a § 1115 waiver. Plaintiffs sought a declaration that 42 C.F.R. § 412.106(b)(4)(ii) was unlawful to the extent that it excluded "expansion waiver populations" before January 20, 2000. They also sought an order requiring the Secretary to recompute their disproportionate patient percentages for certain fiscal years and to pay them

additional amounts in accordance with 42 U.S.C. § 1395oo(f)(2), and a declaration that the court would retain jurisdiction until these steps had been accomplished.

In a Findings and Recommendation filed on February 11, 2003, Magistrate Judge Jelderks recommended that plaintiffs' motion for a summary judgment determining that plaintiffs were entitled to this relief be granted. I adopted the recommendation and entered a judgment in plaintiffs' favor on April 16, 2003.

On September 23, 2003, Magistrate Judge Jelderks entered an order granting the parties' joint motion to stay the judgment pending appeal.

On April 28, 2005, the court received the Ninth Circuit mandate affirming my decision. On June 30, 2005, Magistrate Judge Jelderks entered a minute order that stated that the judgment I entered on April 16, 2003, would be "given full force and effect."

Shortly after the stay was lifted, the parties began disagreeing as to how the judgment was to be carried out. On July 26, 2005, plaintiffs filed a motion to amend or correct the judgment. During oral argument on that motion, the parties disagreed about the proper method for determining the additional payments to which plaintiffs were entitled in this and two related actions, Portland Adventist Medical Center v. Thompson, Civil No. 03-889-JO (Adventist II), and Portland Adventist Medical Center v. Leavitt, Civil No. 05-192-JO (Adventist III).[1]

On July 29, 2005, I entered judgments in Adventist II and Adventist III and an order and amended judgment in Adventist I. Those judgments declared that the Secretary's prior policy of excluding § 1115 Medicaid-eligible expansion populations from the DSH calculation, as was in effect before January 20, 2000, was invalid. Based upon that declaration, the judgments added that the Secretary was required:

> to instruct his intermediaries in Oregon that each of the Plaintiffs' cost reports at issue must be corrected to include within the Medicare DSH calculation all

---

[1] The parties had agreed earlier that the substantive issues in all three cases are identical and that the disposition of Adventist I would apply to Adventist II and Adventist III as well.

OPINION AND ORDER - 3

>Medicaid-eligible populations previously excluded under the Secretary's invalid prior policy. In accordance with this Order, Plaintiffs shall supply to the Secretary's intermediary in Oregon documentation of the Medicaid eligibility of the previously excluded populations. The Secretary shall instruct his intermediary in Oregon to complete its audit of such documentation, and make the resulting payment of additional Medicare DSH funds within 90 days of the intermediary's receipt of the Medicaid-eligibility documentation from Plaintiffs. The payments to the Plaintiffs shall reflect all amounts to which Plaintiffs are entitled under the Medicare DSH statute with § 1115 Medicaid-eligible expansion populations factored into the calculation and shall include an award of interest thereon pursuant to 42 U.S.C. § 1395oo(f)(2).

The judgments also added that, because disagreements could arise during the audit and payment process, and because "the Medicare Administrative process often takes years to resolve such disagreements," the court would retain jurisdiction until compliance was complete.

On October 12, 2005, plaintiffs filed the pending "Motion to Enforce Judgment and for Award of Costs and Fees." In the motion, plaintiffs seek an order requiring the Secretary to take the following actions:

>1. Include all Medicaid-eligible days in the DSH calculations for plaintiff hospitals that did not previously qualify for DSH, if the plaintiff hospitals have provided documentation of those days "consistent with the Court's Amended Judgment dated July 29, 2005, at paragraph 2;"
>
>2. Discontinue any attempts to link final payments to "the ordinary Medicare administrative process," and instead follow the plaintiffs' instructions regarding the manner in which payments would be transmitted and "not identify final payments in this matter as an ordinary Medicare payment in any respect;"
>
>3. Wire transfer all payments not yet made to ensure the plaintiffs' immediate access to funds transferred;
>
>4. Recalculate payments made to date "to ensure that all documented Medicaid-eligible days have properly been included in both the operating and capital DSH calculations;" and
>
>5. Pay the costs and fees that plaintiffs have incurred between the date of entry of the amended judgment and the present as a result of the aspects of the Secretary's conduct to which plaintiffs object in this motion.

## DISCUSSION

Plaintiffs have three principal objections to the manner in which the Secretary is calculating and paying the amounts due. First, plaintiffs object to what they characterize as

the Secretary's "attempts to treat final payments in this matter as if they were Medicare payments governed by the ordinary administrative process . . . ."  Plaintiffs assert that the court has "expressly rejected" characterization and treatment of payments owing as a result of this litigation as part of ordinary administrative proceedings, and contend that the Secretary is "directly contravening the Court's express Judgment and verbal instructions," resulting in severe prejudice to plaintiffs' interests.

As examples of this conduct, plaintiffs cite the Secretary's rejection of plaintiffs' requests that payments be transferred to their counsel's client trust account or another account of their choosing, and the Secretary's practice of providing each plaintiff hospital with electronic notice of payment in the format used in the "course of the ordinary administrative process."  Plaintiffs contend that satisfaction of the judgment through ordinary administrative procedures deprives them of immediate access to the funds owed, makes it difficult to distinguish between payments related to the Judgment and ordinary Medicare payments, and raises the concern that "the Secretary will subsequently assert a right to administratively revisit these payments, despite this Court's express instructions to the contrary."

A review of the record does not support plaintiffs' assertion that this court has required the Secretary to suspend normal administrative procedures, and has ordered that final payments in this action are not to be made in a manner consistent with the ordinary administrative process.  The Order and Amended Judgment entered on July 29, 2006, does not require the Secretary to ignore or bypass the ordinary rules and procedures that apply to Medicare payments.  That document instead provides that the court will retain jurisdiction until the matter is finally resolved because "disagreements may arise during the audit and payment process . . . and the fact that the Medicare administrative process often takes years to resolve such disagreements."  Except for the requirement that payments be made within 90 days of the Fiscal Intermediary's  ("FI's") receipt of the relevant information, I have found nothing in the record setting out precisely how plaintiffs are to be paid and notified of

OPINION AND ORDER - 5

payments, or specifically requiring that the Secretary deviate from the normal administrative process in making the payments.

Certainly, the Secretary should make reasonable efforts to identify the payments in a manner that informs plaintiffs that they are based upon the Judgment in this action. However, plaintiffs have cited, and I am aware of, no authority for the proposition that, beyond this, the payments must be made in any particular manner.

Plaintiffs' other complaints about the manner in which payments are being made likewise fail. To the extent that plaintiffs complain that they did not timely receive certain payments, the Secretary has submitted unrebutted evidence that appropriate interest was paid for the period of the delay. In response to plaintiffs' concern that the Secretary "will subsequently assert a right to administratively revisit" the payments, defendant has submitted the declaration of Charlotte Benson, Director, Division of Provider Audit Operations, Financial Services Group, Office of Financial Management, of The Centers for Medicare and Medicaid Services, United States Department of Health and Human Services. Ms. Benson acknowledges that the court expects payments to be "final," and pledges that, unless there is "clear evidence of fraud, CMS will not seek to revisit the payments made pursuant to the judgment in this case." This declaration should be sufficient to assure plaintiffs that, regardless of how any particular documents related to the required calculation and payments may be captioned or identified, the payments will be reopened or "revisited" only upon a showing of clear evidence of fraud. If a dispute arises concerning clear evidence of fraud, the dispute may be submitted to the court for resolution pursuant to the court's continuing jurisdiction under paragraph 3 of the Order and Amended Judgment.

Plaintiffs' second, and most critical, objection concerns the manner in which the Secretary has interpreted the second paragraph of the Amended Judgment. That paragraph states that plaintiffs will provide "documentation of the Medicaid eligibility of the previously excluded populations," and requires the Secretary to "instruct his intermediaries in Oregon that each of the Plaintiffs' cost reports at issue must be corrected to include within the

OPINION AND ORDER - 6

Medicare DSH calculation all Medicaid-eligible populations previously excluded under the Secretary's invalid prior policy."

This dispute centers on the calculation of amounts owing to hospitals that did not qualify for any DSH payments before the Secretary's earlier policy of excluding § 1115 expansion waiver days was invalidated in this action, and § 1115 expansion waiver days were included. These plaintiff hospitals have submitted new data not previously included in their cost reports, including more than just the § 1115 expansion waiver days previously excluded, for the years that they did not previously qualify for DSH payments under the Secretary's invalidated policy. The Secretary has instructed the FI to ignore the new information, except for the § 1115 expansion waiver days.

Plaintiffs contend that the Secretary must instruct the FI to recalculate DSH payments for those hospitals by not simply adding § 1115 expansion waiver days to the documentation that the hospitals had submitted during the years in question, but by adding the expansion waiver days and recalculating payments using new information reported now for the first time. Plaintiffs state that the hospitals that did not qualify for DSH payments earlier did not submit accurate information because the data was not going to be used to make operating DSH calculations. They assert that, because the earlier "cost reporting years did not previously qualify for DSH payments under the Secretary's invalidated policy the Hospitals' Medicaid-eligible days were never fully audited or verified to confirm their accuracy, for purposes of an initial DSH payment." Plaintiffs further assert that the "affected hospitals" have now "provided the intermediaries with complete and documented Medicaid-eligibility data, consistent with [paragraph 2 of] the Court's Judgment."

The court has carefully reviewed plaintiff's complaint, the opinion of the Ninth Circuit affirming my decision, the Order and Amended Judgment entered on July 29, 2005, and the parties' arguments and documentation related to the pending motion. Based upon that review, I am satisfied that the Secretary is not required to fully recalculate earlier cost reports for the hospitals in question as plaintiffs contend, but is instead required only to add

OPINION AND ORDER - 7

the previously excluded § 1115 waiver days to calculations that had been omitted under the policy invalidated in this action. In their complaint, plaintiffs asked only that the "expansion eligibility populations" made Medicaid-eligible because of a § 1115 waiver be added to DSH calculations. The Order and Amended Judgment does not require more, but instead simply states that plaintiffs are to supply the FI with "documentation of the Medicaid eligibility of the previously excluded populations," and requires the Secretary to instruct the FI to "complete its audit" of that documentation and make the resulting payments. The "previously excluded" group includes only those patients who received medical assistance under a § 1115 expansion waiver project, and the only calculation ordered is the addition of that group.

Although plaintiffs now assert that information submitted earlier for the hospitals that did not qualify for DSH payments without inclusion of the § 1115 waiver days is inaccurate, those hospitals certified that the information included in the cost reports was true and correct when they originally submitted that information. In addition, before the court may consider a challenge to Medicare payments, a plaintiff must exhaust the issue through administrative procedures. See Queen of Angels/Hollywood Presbyterian Medical Center v. Shalala, 65 F.3d 1472, 1482 (9th Cir. 1995) (Medicare administrative exhaustion requirements jurisdictional). In the present action, plaintiffs exhausted administrative remedies concerning only the Secretary's exclusion of § 1115 waiver days from the DSH calculation. If they thought that they had submitted erroneous data or that the FI's calculations were incorrect in some other respect, the hospitals in question could have sought review within 180 days before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a). These hospitals could then have sought judicial review of the PRRB's decision.

Here, plaintiffs sought review of only the exclusion of § 1115 expansion waiver days from the Secretary's DSH calculations, and did not challenge any of the other calculations which they now assert are incorrect. The numbers to which plaintiffs now object are part of settled cost reports which plaintiff did not appeal or seek to reopen timely. Because plaintiffs

OPINION AND ORDER - 8

did not seek review of other errors that they now assert exist in the underlying calculations for the plaintiff hospitals that did not previously qualify for DSH payments, this court lacks jurisdiction to reach those questions.

Plaintiffs' final objection is based upon the Secretary's decision to make final payments pursuant to the Judgment to plaintiff McKenzie-Willamette Hospital rather than to Willamette Community Health Solutions. In 2003, ownership in McKenzie-Willamette Hospital was transferred to a joint venture with Triad Hospitals, Inc., and the hospital was renamed McKenzie-Willamette Medical Center. Plaintiffs assert that the new owner of the hospital "assumed the hospital's provider agreement with Medicare, but did not acquire the legal rights to any damages awarded" in this action. They contend that Willamette Community Health Solutions has "legal ownership" of any damages, and assert that the Secretary's denial of McKenzie-Willamette's and Willamette Community Health Solutions' request to pay the damages to Willamette Community Health Solutions required McKenzie-Willamette Hospital "to assist in determining when payment was received, and in what amount, and then transfer the funds to Willamette Community Health Solutions." Plaintiffs also assert that the Secretary has refused to consider "the obvious business, tax, financial and accounting justifications for the Hospitals' requests related to manner of payment."

Defendant asserts that it acted properly in making payments pursuant to the judgment to the new owner of the hospital, which is the current party to the Provider Agreement, and not to the entity that operated the hospital during the years for which damages are being paid. I agree. When a Medicare provider changes ownership, the existing provider agreement is automatically assigned to the new owner, and the new owner replaces the old owner as the provider. 42 C.F.R. § 489.18(c). The assigned provider agreement "is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued[.]" 42 C.F.R. § 489.18(d). Defendant has submitted unrebutted evidence that its conduct here was consistent with the Secretary's preexisting conclusion that relevant statutes and regulations require that Medicare underpayments and overpayments that accrued

OPINION AND ORDER - 9

while a previous owner operated a hospital are to be settled with the successor owner. That conclusion appears to have been confirmed in <u>United States v. Vernon Home Health, Inc.</u>, 21 F.3d 693, 696 (5th Cir. 1994) (new owner of health agency jointly and severally liable with previous owner for overpayment of Medicare reimbursement that occurred before change of ownership).

For the reasons discussed above, I conclude that plaintiffs are not entitled to the order enforcing the judgment that they now seek. Because they should not prevail on this motion, they likewise are not entitled to recover, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1(A), their attorneys' fees and costs incurred since the entry of the Order and Amended Judgment of July 29, 2005.

## ORDER

Plaintiffs' motion to Enforce the Judgment and for an Award of Fees and Costs (# 100) is DENIED.

DATED this 24th day of May, 2006.

<u>/s/ Robert E. Jones</u>
Robert E. Jones
U.S. District Judge

OPINION AND ORDER - 10